# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 4, 2003 Session

## SAMUEL TIMOTHY COLLINS v. KNOX COUNTY, TENNESSEE, et al

**Appeal from the Circuit Court for Knox County**
**No. 03-90-01     Wheeler A. Rosenbalm, Judge**

### FILED FEBRUARY 25, 2004

### No. E2003-01421-COA-R3-CV

---

This appeal arises out of a complaint filed by the Appellant, Samuel Timothy Collins, against the Appellee, NBC Bank, for damages he allegedly incurred as a consequence of his erroneous arrest and incarceration by the Knox County Sheriff's Department. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Circuit Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. Charles D. Susano, Jr., J., filed a concurring opinion.

John K. Harber, Knoxville, Tennessee, for the Appellant, Samuel Timothy Collins

Arthur G. Seymour, Jr. and Robert L. Kahn, Knoxville, Tennessee, for the Appellee, NBC Bank

### OPINION

In February of 2000 the Knox County Sheriff's Department held an outstanding warrant for the arrest of an individual named Timothy L. Collins (hereinafter "the fugitive Collins") for insurance fraud. The fugitive Collins retained an account at NBC Bank (hereinafter "NBC" or "the Bank") and it appears that a check had been issued on such account in association with the alleged insurance fraud. In its effort to locate the fugitive Collins, the Sheriff's Department notified NBC of its investigation and requested that it be notified should "Tim Collins" appear at any of the Bank's branch locations.

Thereafter, Samuel Timothy Collins (hereinafter "the Appellant"), who also held an account at NBC, was present at one of the Bank's branches to deposit his paycheck. The teller waiting on the Appellant at the time was aware of the Sheriff's Department's request that it be notified if "Tim Collins" should appear. In compliance with such request the teller stalled the Appellant while the Bank notified the Sheriff's Department that "Tim Collins" was at the Bank. After a brief period of

time Knox County deputies arrived at the Bank and informed the Appellant that there was an outstanding warrant for his arrest. Apparently both the Bank and the Appellant agree that the deputies examined the Appellant's driver license, radioed the information contained therein to the Sheriff Department's office and were advised that the identifying information on the license and the identifying information in the arrest warrant did not match. Nevertheless, the Appellant was arrested, his paycheck was confiscated and his vehicle was impounded. The Appellant was then transported to the Knox County Detention center where he was clothed in prison garb and incarcerated. The Appellant was detained for approximately five hours until the Sheriff's Department realized that he had been mis-identified as the fugitive Collins whereupon he was released. Later on the same day the Appellant's automobile and paycheck were returned to him.

In February of 2001 the Appellant filed a complaint in the Knox County Circuit Court against Knox County, Knox County Sheriff Tim Hutchison, three unidentified Knox County deputies and NBC Bank. The complaint alleges that, due to the combined negligence of the Defendants, the Appellant was falsely arrested and incarcerated and his property was confiscated. The complaint further alleges that, as a result of the Defendants' actions, the Appellant "suffered injuries including, but not limited to, the embarrassment and humiliation associated with imprisonment, the loss of reputation and esteem among his peers and within his community, out-of-pocket expenses, as well as other incidental and consequential damages...."

All of the Defendants named in the Appellant's complaint filed motions for summary judgment. Subsequently, the Appellant voluntarily dismissed his cause of action against Knox County, Sheriff Hutchison and the three unidentified Knox County deputies and the Trial Court granted NBC Bank's motion for summary judgment.

The sole issue upon appeal is, as restated, whether the Trial Court erred in granting the Bank's motion for summary judgment.

The standard governing our review of a trial court's decision to grant summary judgment is well settled under the law in this State. The trial court's judgment involves purely a question of law and, accordingly, it is not entitled to a presumption of correctness. *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995). Our sole task in reviewing such a judgment is to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Mason v. Seaton,* 942 S.W.2d 470 (Tenn. 1997).

As set forth in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993) at page 214:

> Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial. (emphasis in original)

In its motion for summary judgment NBC asserts that it "simply obeyed the request for assistance by the Knox County Sheriff's Department." NBC's motion further states that "[t]he decision to arrest was that solely of the Knox County Sheriff's Department. NBC did not request or suggest [the Appellant's] arrest, nor did it persuade or influence the Sheriff's Department in its decision." In light of these facts, NBC contends that the Appellant cannot sustain his cause of action. In support of this contention NBC cites *Hertzka v. Ellison*, 8 Tenn. App. 667 (1928) wherein the Court stated as follows at page 674:

> One cannot be held liable for false imprisonment where he merely informed an officer of circumstances which aroused his suspicions, but made no request or suggestion that the suspected person be arrested, and the officer, of his own volition, made an arrest.

The Appellant argues that the rule set forth in *Hertzka* was subsequently expanded in *Blue Star Service, Inc. v. McCurdy,* 251 S.W.2d 139 (Tenn. Ct. App. 1952) and that, under the holding of this Court in the latter case, a defendant is liable for false arrest if the defendant does not exercise reasonable diligence before setting in motion the machinery which proximately causes the arrest.

Under the facts in *Star Service, Inc.* the plaintiff's car was repossessed by a finance company after he fell behind in payments. Pursuant to a prior arrangement between the finance company and the defendant parking lot owner, the finance company parked the car on the defendant's lot and was issued a claim check. A few days later the plaintiff paid the finance company and was given the claim check for the car. The finance company then advised the defendant that the plaintiff was entitled to possession of the car. Thereafter, the plaintiff retrieved his car from the defendant's lot; however, the defendant was apparently unaware that it was the plaintiff who had taken the car and attested that it had no record of having received the claim check. Accordingly, upon discovering that the car was no longer on the lot, the defendant notified the police department that it had been stolen. The defendant advised the police that he did not know whether the plaintiff had taken the car, but that the plaintiff had paid the finance company and was entitled to possession upon presentation of the claim check. Pursuant to a request by the police that the defendant make inquiries to verify the fact that the car had in fact been stolen, the defendant contacted the finance company for information whereby it could contact the plaintiff. The finance company advised the defendant that the plaintiff did not have a telephone and gave the defendant the plaintiff's home address. However, the defendant did not attempt to contact the plaintiff at his home and simply reported back to the police that the car had been stolen. Thereafter, the police located the car being driven by the plaintiff who was arrested, handcuffed and taken to jail. Upon appeal to this Court we noted that, even though the defendant was instructed by the police to make an investigation before they acted upon the defendant's report that the car had been stolen, the defendant made no effort to contact the plaintiff other than obtaining his mailing address. We also noted there was no evidence that the defendant gave the police a description of the plaintiff or took precautions to prevent the arrest of the plaintiff should he be found in possession of the car. At page 142 we stated as follows:

The evidence compels the finding that there would have been no arrest but for the report of a stolen car and that defendant knew that anyone found in possession would be arrested or detained by reason of the report, if found in possession. So it matters not whether defendant intended or not that plaintiff be arrested, because he intended or knew that somebody would be arrested, if found in the car.

Under these circumstances defendant owed the duty of reasonable care in making a stolen car report.

We are compelled to observe that, unlike the defendant in *Star Service,* NBC Bank did not initiate the action which resulted in the arrest in the present case. NBC merely complied with the request that it notify the Sheriff's Department should "Tim Collins" appear. A warrant for the arrest of the fugitive Collins was issued before the Bank was ever contacted by the Sheriff's Department and, therefore, the machinery which proximately caused the Appellant's arrest was set in motion prior to NBC's involvement.

The defendant in *Star Service, Inc.* attempted to rely on the same provision from *Hertzka* cited above by NBC; however, this Court noted as follows at page :

It appears from the cases cited in the *Hertzka* case as well as in many others, that if the evidence shows the officer acted on his own volition, the informer is not liable, but if he acted under the direct or indirect request of the informer the later will be held liable; and where the evidence is in dispute, it is for the jury.

In *Hertzka* the defendant's report that the car was stolen carried an implied indirect request that the individual found in possession of the car be arrested. By contrast, in the present matter there is no evidence that the Bank requested, directly or indirectly, that the Appellant or the fugitive Collins or anyone else be arrested.

This Court has hitherto stated that "*Star Service* stands for the proposition that one is subject to liability for false arrest where one files a complaint with the police without exercising reasonable care in reporting the crime." *Ross v. Gunther*, an unreported opinion of this Court filed in Nashville on December 17, 1986. NBC neither filed a complaint nor reported a crime in this case.

The Appellant contends that "it would have been prudent for NBC Bank to verify whether or not there was more than one Timothy Collins that was an NBC Bank customer" and that, before notifying the Sheriff's Department, the Bank had a duty to make a reasonable investigation as to whether the individual who appeared at the Bank was, in fact, the individual the Sheriff's Department was pursuing. However, the Sheriff's Department already had information showing that the Appellant was not the person it was seeking. As previously noted, it is undisputed that the Appellant presented the arresting deputies with identifying information which did not match

information identifying the fugitive as set forth in the arrest warrant. We further note the following testimony of the Appellant recounting the observations of a Sheriff Department employee during the time that the Appellant was being booked which provides additional confirmation that the Sheriff's Department already had sufficient information to determine that the Appellant was not the individual they were seeking:

> A ... And then from there they took me to a room probably not a whole lot bigger than this with probably 25, 30 other people in it, and that's where I stayed until they came and got me to fingerprint me, and I guess book me. I think then is when they realized that I was not who they were looking for.

> Q Who was it that realized that? What was the first indication there?

> A They took me into the room where they did all the fingerprints and mug shots, and the guy that was doing it I noticed him looking at my paperwork. And he said stand up against the wall and don't move. I'll be right back, and I said, okay.

> Well, he left and he came back with another officer and *he said is that him? And the guy said, no, that's not him. That guy's not – you know, he's twice that guy's size. That's not him.* (Emphasis added.)

Notwithstanding all the information the Sheriff's Department already had whereby it could have distinguished the Appellant from the fugitive, the Appellant was arrested.

The record shows that the Knox County deputies acted on their own volition in arresting the Appellant without any prompting by NBC. Accordingly, we find no merit in the Appellant's argument that summary judgment was inappropriate in this case.

For the foregoing reasons we affirm the judgment of the Trial Court. Costs of appeal are adjudged against Samuel Timothy Collins and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE